NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EARLEE KING,**

*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2010-7133

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 07-1214, Chief Judge William P. Greene, Jr.

---

Decided: July 21, 2011

---

JOHN F. CAMERON, JR., of Montgomery, Alabama, argued for claimant-appellant.

JACOB A. SCHUNK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assis-

tant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. On the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, United States Department of Veterans Affairs, of Washington, DC.

————————————

Before RADER, *Chief Judge*, LINN and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

Earlee King appeals from the United States Court of Appeals for Veterans Claims' ("Veterans Court") decision affirming the decision of the Board of Veterans' Appeals ("Board") establishing May 15, 2000 as the effective date for Mr. King's benefits award. *See King v. Shinseki*, 23 Vet.App. 464, 471 (2010). Mr. King argues that the Veterans Court erred by failing to require an earlier effective date based on March 1995 and June 1997 communications between Mr. King and medical examiners at the Department of Veterans Affairs ("VA"). Because we find that the Veterans Court committed no reversible legal error in affirming the May 15, 2000 effective date, and since all other appealed issues extend beyond our jurisdiction, we *affirm*.

## I. BACKGROUND

Mr. King served in the United States Army from February 1980 to October 1983. Believing he had schizophrenia, Mr. King applied in February 1992 for service-connected benefits to a Veterans Affairs Regional Office ("RO"). The RO denied this claim, however. After an appeal, the Board also denied the claim (in August 1994). Mr. King chose not to appeal the Board's decision to the Veterans Court. As such, the adjudication became final.

On May 15, 2000, Mr. King sought to formally reopen his claim for service connection, providing as a basis medical records generated during March 1995 and June 1997 visits to a VA hospital. The Board ultimately reopened the claim, finding that Mr. King had presented new and material evidence since the initial 1994 Board decision. In 2004, the RO granted Mr. King a service connection for schizophrenia with a 100% disability rating, effective May 15, 2000 (the date Mr. King formally applied to reopen his claim).

Mr. King, however, believed that he was entitled to an earlier effective date because of certain communications he made to the VA medical examiners during his March 1995 and June 1997 hospital visits. In particular, Mr. King believed his communications constituted "informal claims" under the VA regulations. Therefore, he appealed the RO's decision to the Board. The Board denied Mr. King's request for an earlier effective date because the record "d[id] not include any communication from the veteran or his representative received prior to May 15, 2000, that may reasonably be construed as an indication that he was seeking to reopen his claim for service connection." A Veterans Court panel affirmed, concluding that none of the records or other evidence associated with Mr. King's March 1995 and June 1997 medical visits showed that Mr. King possessed the necessary intent required by the VA regulations to warrant an earlier effective date. *See King*, 23 Vet.App. at 471.

Mr. King timely appealed the Veterans Court's decision.

## II. Discussion

This court's jurisdiction to review decisions by the Veterans Court is limited. We have exclusive jurisdiction "to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). Absent a constitutional issue, we lack jurisdiction to review "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

## A. 38 C.F.R. § 3.155(A)

Mr. King asks us to decide whether he is entitled to an effective date before May 15, 2000, which is the date he filed his request to reopen the final adjudication. The effective date for a benefits award stemming from a veteran's request to reopen a final adjudication is typically "the date that the request to reopen was filed." *Jones v. Shinseki*, 619 F.3d 1368, 1371 (Fed. Cir. 2010) (citing 38 U.S.C. § 5110(a)). The VA regulations, however, permit claimants to obtain an earlier effective date in certain circumstances. For instance, under 38 C.F.R. § 3.155(a), "[a]ny communication or action, indicating an intent to apply for one or more benefits" can qualify as an "informal claim" so long as that claim "identif[ies] the benefit sought" and is made by "a claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris." Under this court's precedent, a communication qualifies as an informal claim pursuant to § 3.155(a) if that communication (1) is written; (2) indicates an intent to apply for benefits; and (3) identifies the benefits sought. *Rodriguez v. West*, 189 F.3d 1351, 1354 (Fed.

Cir.1999). If these requirements are met, the date of the informal claim can serve as the effective date for the benefits award provided that the claimant timely submits an application form to the VA in accordance with the regulation. *See* 38 C.F.R. § 3.155(a).

On appeal, Mr. King argues that he asserted an informal claim for benefits under 38 C.F.R. § 3.155(a) during both his March 1995 and June 1997 medical visits to the VA hospital and is thus entitled to a March 1995 or June 1997 effective date. While neither Mr. King nor any of the other entities listed in § 3.155(a) who may file on behalf of Mr. King submitted a written communication to the VA hospital staff during these visits, Mr. King argues that he satisfied § 3.155(a) because he communicated his intent to file a claim to the VA medical examiners who then recorded the contents of these communications in their written reports.

In particular, the report from the March 1995 visit states that Mr. King "is N[on-]S[ervice-]C[onnected] but is trying." The June 1997 report states that the "[v]eteran wants to file a claim for service connected disability." If these notes show that Mr. King intended to file a claim for benefits during his VA hospital visits, as opposed to merely informing the medical examiners of his intent to file a claim in the future, it might be argued that he could enjoy March 1995 or June 1997 as his effective date instead of May 15, 2000.

As the Veterans Court explained, the Board did not directly address the March 1995 and June 1997 visits in its opinion. *King*, 23 Vet.App. at 472. The Board simply stated that the record "d[id] not include any communication from the veteran or his representative received prior to May 15, 2000, that may reasonably be construed as an

indication that he was seeking to reopen his claim for service connection." The Veterans Court did discuss the medical visits, however, characterizing Mr. King's communications to the VA examiners as mere "wish[es] or desire[s] to obtain service connection." *Id.* at 471. The court concluded that Mr. King's statements that he "was 'trying' to obtain service connection and 'wanted to file' for service connection' . . . failed to manifest the requisite intent to reopen a previously denied schizophrenia service-connection claim." *Id.* at 469. As such, the court held that the Board's decision setting May 15, 2000 as the effective date was not arbitrary and capricious. *Id.*

As evident in the Veterans Court's analysis, determining whether Mr. King's communications with VA examiners support a finding of intent under § 3.155(a) requires considering the facts in the record and discerning what Mr. King was thinking when he visited the VA hospital. We lack jurisdiction to make findings regarding these fact-based issues and, therefore, cannot upset the Veterans Court's intent ruling. *See* 38 U.S.C. § 7292(d)(2). As a result, we cannot award Mr. King an effective date prior to May 15, 2000 based on his argument that he had the intent necessary to file an informal claim under § 3.155(a) in March 1995 or June 1997.

In addition to the intent argument, Mr. King asserts that the Veterans Court erred because it interpreted § 3.155(a) to only permit the veteran himself (or one of the other entities listed in the provision who can file on behalf of the veteran) to satisfy the writing requirement. *See Rodriguez v. West*, 189 F.3d at 1355 (holding that a communication can only qualify as an informal claim under § 3.155(a) if in writing). Under such an interpretation, a writing created by a person not listed in § 3.155(a), such as a VA doctor, arguably would not qualify as an informal

claim under the regulation even if it accurately summarized the veteran's communications.[1] The Veterans Court's interpretation is problematic for Mr. King because the VA medical examiners are the individuals who created the writings that Mr. King now asserts as his informal claim.

While we have jurisdiction to resolve this matter because it involves a purely legal interpretation of a regulation, *see* 38 U.S.C. § 7292(c), we decline to exercise that jurisdiction. "[A]s an appellate court (where our jurisdiction permits), '[w]e sit to review judgments, not opinions.'" *Szemraj v. Principi*, 357 F.3d 1370, 1375 (Fed. Cir. 2004). Therefore, "if our decision cannot affect the judgment of the court below, because there was no legal error in the judgment itself, there is no basis for reversal." *Id.*

Here, a holding that the Veterans Court misconstrued § 3.155(a) in the manner proposed by Mr. King would not impact the court's finding that Mr. King lacked an intent to file an informal claim before May 15, 2000. Indeed, the intent element and the writing element each require their own, independent analyses. Put differently, even if we agreed with Mr. King and concluded that a writing produced by a medical examiner could qualify as an informal claim under § 3.155(a), Mr. King's effective date of May 15, 2000 would not change because of the Veterans Court's intent finding. As mentioned, the Veterans Court's intent finding must stand because we lack jurisdiction to review it. Because a ruling on who can write an informal claim under § 3.155(a) would not impact the

---

[1]    It is unclear whether the Veterans Court interpreted § 3.155(a) in the manner Mr. King alleges, but we will assume it did for purposes of this appeal.

ultimate judgment in this case (i.e., that May 15, 2000 is the effective date), we decline to address this issue.

### B.  38 C.F.R. § 3.157

Next, Mr. King challenges the Veterans Court's interpretation of 38 C.F.R. § 3.157, another VA regulation permitting an earlier effective date based on the filing of an informal claim.  This provision permits a medical report itself to qualify as an informal claim in certain circumstances.  *See* 38 C.F.R. § 3.157.  On appeal, Mr. King does not argue that the medical reports produced during the March 1995 and June 1997 VA hospital visits meet the requirements of § 3.157.  Instead, Mr. King argues that the Veterans Court erroneously construed § 3.157 such that it is the only regulation under which a veteran can rely on a medical record to support an informal claim.  We have jurisdiction to resolve this issue because it involves a purely legal interpretation of a regulation.  *See* 38 U.S.C. § 7292(c).

Nothing in the Veterans Court opinion suggests that the court construed § 3.157 as Mr. King alleges.  Instead, the court's own analysis under § 3.155 indicates that it did not view § 3.157 as the only regulation permitting medical reports to support informal claims.  Indeed, when analyzing intent under § 3.155, the court considered at length the medical reports from the March 1995 and June 1997 VA hospital visits.  Therefore, we reject Mr. King's § 3.157 argument.

### C.  Board's Consideration of March 1995 and June 1997 Hospital Visits

Finally, Mr. King argues that the Board did not consider his March 1995 and June 1997 visits to the VA

hospital when setting May 15, 2000 as the effective date. Therefore, according to Mr. King, the Veterans Court had no findings on this issue to review. As a result, Mr. King asserts that the Veterans Court's conclusions regarding the VA hospital visits (e.g., that Mr. King lacked intent under § 3.155) constituted initial, and thus improper, factual findings. In support of its argument, Mr. King relies on *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000), which states that the "statutory provisions [applying to veterans] are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding." For the reasons stated below, we reject Mr. King's argument.

As acknowledged by the Veterans Court, the Board did not specifically mention Mr. King's March 1995 and June 1997 visits to the VA hospital in its opinion. *King*, 23 Vet.App. at 472. The Board generally stated, however, that the record "d[id] not include any communication from the veteran or his representative received prior to May 15, 2000, that may reasonably be construed as an indication that he was seeking to reopen his claim for service connection." It is undisputed that the record before the Board contained the medical reports created during Mr. King's hospital visits. The Board is presumed to have considered all evidence contained in the record. *See Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007) (Board's failure to mention evidence in opinion does not overcome presumption that Board considered the evidence). Because the record before the Board contained the March 1995 and June 1997 medical reports, we must presume that the Board considered these reports and that its ultimate judgment setting the effective date at May 15, 2000 included a finding that these reports did not provide a basis for an earlier effective date.

The Veterans Court found no error in the Board's decision to set the effective date at May 15, 2000. *King*, 23 Vet.App. at 472. The Veterans Court did, however, elaborate on the medical records issue, explaining that these records do not undermine the Board's conclusions. *Id.* at 470-71. Determining whether these elaborations rise to the level of initial fact findings requires a comparison between the Board's findings and the Veterans Court's findings. We lack jurisdiction to conduct this fact-based analysis. *See* 38 U.S.C. § 7292(d)(2).

Mr. King attempts to couch his argument that the Veterans Court made initial factual findings argument as purely legal. In particular, Mr. King argues that had the "Veterans Court applied the correct legal standard for judicial review, it would have concluded that the Board's finding of fact on the issue of whether Mr. King filed a claim to reopen prior to May 2000 [was] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." We could only reach this conclusion, however, after comparing the Board and Veterans Court findings in the manner discussed in the previous paragraph. Because Mr. King's proposed legal argument ultimately reduces to a fact-based analysis, we lack jurisdiction to address this matter under 38 U.S.C. § 7292. *See Cook v. Principi*, 353 F.3d 937, 937-38 (Fed. Cir. 2003) (finding no jurisdiction because review of issue "ultimately reduce[d] to an application of the law to facts" where veteran "present[ed] his argument as a legal premise couched in terms of statutory interpretation").

### III. CONCLUSION

Because we find that the Veterans Court committed no reversible legal error in affirming the May 15, 2000 effective date, and since all other appealed issues are

beyond our jurisdiction, we affirm.

Costs

Each party shall bear its own costs.

**AFFIRMED**